Thank you, Your Honor. I may please the court. I am Dallas Strimple, along with my co-counsel who's still in the gallery, Mr. Steve Stidham, here representing the appellants today, Mr. William Fletcher and Tara Dameron. We're lucky to have Tara. She was the executor and inherited the interests of another plaintiff, Charles Pratt, after he passed away from prostate cancer several years ago. The case is finally before you today simply on the issue of attorney's fees. Plaintiffs, after finally prevailing on the request for an accounting of their trust funds, of which their beneficiaries in the United States manages, sought attorney's fees under the Equal Access to Justice Act. Generally, fees under EJIA are awarded to a prevailing party unless the United States can show that it was substantially justified in its position or some other equitable principle renders an award unjust. Here, we're only on appeal on that issue of whether or not the United States was justified or substantially justified in their position. The district court, looking to the question, was faced with a situation where this case has taken a long time and there were a lot of motion to dismiss issues that held up resolution of plaintiff's claims. How is a court supposed to look at that situation and determine whether the United States was substantially justified? The Supreme Court has offered little guidance on this, but at least in the Commissioner of INSV Gene case from 1990 said that there, at least in the instance of multiple phases of litigation, that a finding of substantial justification has to be made on that case as a whole. It did not say anything regarding separate issues that arise throughout the issue here. So, in undertaking whether or not to determine if the United States was substantially justified, the district court took two different approaches, both of which we believe have an error of law in the way that they went about it, as well as some factual errors with the record. The first step the district court did was it looked at the case on an issue of claim by claim and tallied up where the United States was substantially justified and where it wasn't. The one thing left undisturbed from the district court's opinion is that at least on the accounting claim, the United States was not substantially justified. However, the district court found that regarding the voting rights claim, which was dismissed on a Rule 19 issue early in the case and resolved by Congress during the contingency of appeal and on plaintiffs' post-accounting claims, commonly referred to as misdistribution claims by the defendants in the district court, and I believe we've referred to them in that way as well. Originally, the district court found that to be a Rule 19 issue that required us to bring in approximately 1,700 individuals who were also head right holders and named them as defendants. So, I apologize, Judge Baldick, we also have a really long complaint, but I can guarantee you it's really simple, it's just a lot of parties. But once those individuals were joined, the issue became as a lot of them began to file motions to dismiss as well, which tied up the litigation. Ultimately, the court backtracked on the Rule 19 issue, dismissed all the individuals, and then a year later dismissed both those misdistribution claims and the accounting claim, which led us to appeal in 2013 when Justice Gorsuch's... You just appealed the accounting claim. Yes. Our position throughout the litigation had been that at least since 2006 when we came back from the Tenth Circuit the first time, that on those breach of trust claims, the first step is receiving an accounting. And then once we receive that accounting, we'll have the facts necessary to make claims regarding losses to trust funds. One of those we believe was that there were instances where money was being paid to individuals who didn't have a valid right to head rights. We also had claims regarding interest not being adequately collected by the United States as well. So, that's why our appeal in 2013 was focused solely on the issue of the accounting itself. Well, the court didn't dismiss your breach of trust claims? He dismissed them without prejudice to re-filing, which we confirmed with the court after appeal in one of its first hearings coming back, that part of the reason for that dismissal was an indication that the accounting should take place first. Interestingly enough, the United States had asserted that position right before the case was dismissed in 2012 as well during briefing on bifurcation. But plaintiffs have held that position since the very beginning. You can see it in our response to the United States' motion to dismiss on Rule 19 issues in 2006. That brings to mind, is this request for attorney fees premature? Shouldn't we wait till all this accounting is done and then see if you have a breach of trust claim and so on? Why are we addressing attorney fees at this stage in litigation, which apparently still has a ways to go? And then we can see. So, maybe after you get your accounting, it'll turn out everything's been done hunky-dory and you lose on that. That would be a far different issue regarding attorney fees than if after the accounting, you find gross malfeasance and there's lots of money transferred. Thank you, Judge Hartson. Yes, I believe that that action will probably yield a motion for We've got a final judgment in which we prevailed and sought attorney's fees on. The breach of trust claims themselves are still ongoing, but they're filed in a separate action before the Court of Federal Claims. So, as far as this litigation goes, it's at an end. On top of that, I think you can look towards some of the social... So, what's been resolved in this litigation? The breach of trust claim has not been resolved. The fact that you're entitled to accounting has been resolved, but your demands for more detail on the accounting have been rejected. Are those the only things that have really been decided here? I would say the entitlement to accounting was decided and then the United States has actually produced that accounting as well and complied... But the litigation included your claims that more detail in the accounting was required. Isn't that correct? We have made that... For a longer period of time and more detail, right? Yes, we made that assertion in our previous appeal, which this court found... But that's part of this case. It was, but it was resolved. Yes, but that part was resolved against you. If we're trying to see holistically whether you were prevailing or not, I'd like to know what's been resolved. I had thought that the breach of trust claim was resolved against you, but you're saying it was just postponed. So, that probably doesn't factor either way in this assessment. You're correct, Your Honor. It is, in an essence, postponed, but postponed because it was dismissed without prejudice. Yes, yes, yes. Was there anything else that was resolved? Just plaintiff's claim for an accounting. Well, I'm talking about resolved against you. Resolved against us? Was there anything resolved against you except the extent of the accounting? The only other thing that the district court relied on was that the United States' position Okay. And you lost on that? We lost on Rule 19, and then it became moot on appeal after Congress had passed a statute. But I think what this gets into is a caution that, Judge Hart, your panel had placed into the U.S. v. Johnson case last year, which is reported at, if I can turn pages, but it was decided last March. The district court did not have the benefit of this court's decision in U.S. v. Johnson, and I think, for instance, that comes where the word holistic, it reminded me because I know that was found in U.S. v. Johnson, which is 920 Federal 3rd 628. But in reviewing, in reading U.S. v. Johnson, I think what the court, and I'm sorry if I'm misinterpreting this, Judge Hart, but the important thing was whether or not on the claims that go to the merits, whether or not those claims the United States was substantially justified on. Because it presents a situation of whether or not ancillary issues that draw out litigation at the motion to dismiss stage can prevent award of attorney's fees because on those ancillary issues that drive the litigation for a long time, the United States might be substantially justified on those individual issues. And I know we put in our briefing there is a concern that if that's the case, that could embolden the United States in taking those ancillary issues and driving litigation off the rails to an extent. There's also a number of cases where it's in effect two lawsuits that are simply joined into the same action. If you have a quiet title action with a trespass action, how does a district court handle that situation? Jean doesn't really offer that much guidance because they're in effect two separate lawsuits. And if a party is scared that they might lose on one of those, they may not want to join them together in the same lawsuit and file separate actions, which would do damage to judicial economy in and of itself. So, how are you, what's your argument, that these were two distinct claims and you prevailed on the accounting claim and we should assess attorney fees based on your success on that claim? Is that your argument? That's correct, Your Honor. Well, then how could the court have awarded you attorney fees on the accounting claim when you did not give any detail in your attorney fee records? Doesn't that make it awfully hard, make it impossible for the court to give you an award of attorney fees in that circumstance? I don't think our records were not detailed enough. We had specifically put in the time that we had spent through the case, and that should include the time that you spent on motion to dismiss issues that are roadblocks on the way to an accounting. But we have detailed time records that reference the attorney that's there, the time they spent, and the action that they were performing. I'm sure in the course of 18 years of timekeeping, there's probably some ones that aren't as detailed as they should be, but that's not to say that we didn't provide enough of a record for the district court to review and to undertake that. The district court said it didn't have enough, did it not? Wasn't that an alternative ground for denying relief? The court never, and this is an issue I noticed in reviewing, is the court never made a specific finding on the reasonableness of an attorney fee, which is where that issue came up. Instead, it raised concerns that our time wasn't limited to the claim upon which we prevailed, which in and of itself raises issues on what exactly the court is looking for there. Is it looking for a certain time period? Is it looking for us to go through and identify this was 70% accounting, 30% misdistribution? We had done the best that we could, which was say these were the records that were necessary for us to prevail. We had an expert from Hall, Estill, and Tulsa say that this time was necessary for the plaintiffs to prevail. I would have liked to have a more clear answer from the district court on what exactly it was looking for on that issue. Did you file a motion to reconsider? Say again? Did you file a motion to reconsider with the district court? We did not, Your Honor. We had looked at the issues and thought that the quicker resolution of the issue was probably appeal to this court, mainly because of the substantial justification issues and questions regarding exactly what standard the district court should undertake in determining when the United States is substantially justified. But thank you, Your Honor. It looks like my time is up. I would ask that the district court's decision be reversed and remanded. You may proceed. May it please the court, I'm Jeff Clark from the Justice Department with me at council table are John Arbab from the Justice Department and Erica White, who is an attorney advisor at the Interior Department. I want to cover, I think, Judge Hart pretty quickly what claims were involved in this case because they go to analyzing whether the government's position was substantially justified as a whole. There were a whole bunch of claims that did not get discussed that were resolved and I think clearly informed the district court's proper exercise of discretion here to decide that the United States' position was substantially justified. There are actually three issues in this case, not just one, as Mr. Shrimple states, but I want to start with the substantial justification one because that's where he started. If you look at the issues in the case, there are, by my count, about seven. The first one, and this goes back to their very first complaint, they had a voting rights constitutional claim. That was rejected by the district court on grounds of it needed to be under Rule 19. There needed to be the tribe joined. That issue went up to this court and the court ultimately decided that it was mooted by a statute that was passed. So call that one, in your terms, Judge Hart, sort of neither here nor there for purposes of assessing the range of issues. Okay. Second issue... So you agree that we look not at the auxiliary issues, the ancillary issues. We look at what merits issues were decided. Well, right. Yes, Your Honor. Yes. Although I do think their constitutional claim fit into their overarching theory of attacking distributions to non-Osage and the fact that those who didn't have allotments, those who didn't have head rights, couldn't vote under the tribal constitution and their laws. So that was integral to their case, but it wound up not being resolved on the merits. Okay. Good. The second issue was a takings claim. That was rejected on the merits and never appealed. The third issue was that they argued, and this was the issue that the court said was their overarching legal theory. They argued that there were head rights given to non-Osages and that those should be overturned. They abandoned that claim as well after it was rejected. The district court pointed out that basically under a series of congressional regimes, it was entirely possible prior to about 1978 for non-Osage to hold head rights. They acquired them either by devise after a death or they acquired them through sale. Eventually, Congress prohibited non-Osages from holding rights. But the attempts by the plaintiffs here to show that they could invalidate non-Osage head rights was rejected. That claim was rejected. Clearly, it's something the district court could look at. On the merits. I'm sorry? On the merits. Yes, on the merits. Now, let me ask you. On any of these that you've discussed so far, did those appear by opposing counsel for fees? Well, that's the problem, Your Honor. That goes to the third issue in the case, which is the fact that the district judge entered an order that fees be segregated based on the relevant issues that the time was spent on. Instead, what counsel did was they filed block time entries. But what we have here, the trial court found that they were the prevailing party, right? The trial court found that they were the prevailing party, Your Honor, only on one sub-issue, which was the issue of they had a right to an accounting. The district court even rejected the idea that the United States – I should say the district court found that the United States position on the scope of the accounting was well taken. That came up to this court in an appeal in Fletcher III. This court affirmed the district court. So they lost on that issue. So they lost on a host of merits issues. They tried to turn back the time clock and say that the accounting claim was central to their claims all along. If you read the original complaint and the three amended complaints, it's clear that the essence of what they were really trying to do was to recover the non-Osage head rights, to invalidate those, and then try to eventually be able to get money damages for those over in the CFC. They failed in trying to get – My point is, counsel, is there separate complaints? When they lose one, do they file a new complaint, or do they just amend the old one and proceed on in the same proceedings? So in this case, Your Honor, there's an original complaint and three amended complaints. They didn't start over with an entirely new complaint. Okay. So there's nothing new as far as any complaint is concerned. It's the same cause of action. It's the same complaint, just amended, asserting different claims. Amended at different times based on what the district court's rulings were. Okay. And in the claim that there – it was an amended complaint, I assume, for the accounting. Is that correct? And is that the only issue in that complaint, the accounting issue? No. Your Honor, there were multiple issues in all of the complaints. For instance, the takings issue spans all of the complaints. Their APA claims, which I was about to get to, were rejected. They also span all of the complaints. And so, actually, let me make one more clarification point in response to Judge Hart's question, which is this case is entirely done. I don't think we can say that the attorney's fee motion is premature because there is a final judgment. You know, the only relief they got was this limited accounting, which was not much more supplemented, especially after this court's decision in Fletcher III, beyond information the United States has already given to the tribe. And then the court entertained a fee motion. It decided that that's the end of this case. Plaintiffs have a separate case in the Court of Federal Claims where they're seeking monetary damages. There they may try to resurrect their claims that there were misdistributions to not Osage. But in this case, that theory was entirely rejected by the district court. And in stepping back at the full range of the causes of action that I described to your honors in the original complaint and then threading through all the other complaints, it's clear that the district court did not abuse its discretion in saying that if you look at it holistically, the United States' position was substantially justified. The other side tries to say that we're atomizing the issues because there were multiple legal claims floating around in the case. But, I mean, you know, they're the ones who are actually trying to focus myopically on the single issue of the accounting and pretend as if that were central to their theory all along. Whereas I would say, your honors, if you took a fair reading of the initial complaint and the first three amended complaints before the action was wholly disposed of, you would see that accounting is a concept floating around in there. But the district court found that it was a subordinate issue. It was an issue that they were feeding in as a basis to try to recover and get back the non-Osage head rights that had been transferred over time. And that theory was just flatly rejected by the court. Turning to the other two issues in the case. Let me ask about the atomization. Because the Supreme Court talked about holistically. But at some point, the complaint, I would think, could be considered as raising distinct claims. And you've decided to just put all your lawsuits against the defendant in one complaint. In that circumstance, why shouldn't the EAJA analysis focus on individual distinct claims and say, okay, you prevailed there and the defendant really, the government, should not have argued against you on that point. What's wrong with that argument? So, yeah. So, Your Honor. Or as it applies here. Yeah. I think, Your Honor, that in saying there shouldn't be atomization, that basically what the Supreme Court is saying is that there shouldn't be sort of just a naked nose-counting exercise. You know, of their total of five claims, they lost four. You need to take a step back and look at the action as a whole. And, you know, A, we're talking about assessing the district court's decision here about substantial justification under an abusive discretion standard of review. The district court did look at the action holistically. It didn't just – it looked at the individual claims because it's hard to say you can look at an action holistically without looking at the parts, right? But even if the sum of the parts is larger than that, the district court looked at that and said here that, you know, the United States position was substantially justified because so much of and the gravamen of what the plaintiffs were going after was rejected on the merits. I obviously wasn't very good in asking my question. It's probably my fault, Your Honor. Well, I'm arguing that perhaps you shouldn't aggregate all the claims. If the claims are really distinct causes of action, different facts, you just decide to bring them all in one complaint rather than file three different suits against the same defendant. In that circumstance, shouldn't you be able to recover your attorney fees in one – with respect to one claim even though you rejected on four or five other claims? Yes. Do you think that's okay? Yes, and that goes to our third issue, which is the district court gave them the opportunity to do that and they failed to make an evidentiary case for it with billing records that were not just block time entries saying things like work on claims in the case, right? So the district court said give me a segmentation analysis that shows me what time you spent on the one claim you prevailed on, the accounting. And after repeated chances, you know, being given to the plaintiffs to do that, they failed to do that and the district court said another reason why I'm going to hold you don't get attorney's fees here is you didn't comply with my work. And that's one of the most basic reasons to affirm the judgment here, Your Honor, because district courts, busy trial courts, they have to be able to issue orders about procedural matters like how are you going to give me evidence and then expect those to be obeyed. Here, that order was not obeyed by the district court and the plaintiffs have no excuse for it. They even try to bury it in their brief and say, so today we heard there's only one issue, substantial justification. In the brief, we hear there are two issues, substantial justification and whether the fees were incurred. But in reality, there are three issues, incurred, substantial justification, and disobedience of this order. Each one of those is an independent ground that requires affirmance of the district court and the United States only needs to win on one of those in order to prevail. If you could excuse me for one second. In case of cotton mouth today. So I've spoken about the substantial justification issue. I explained why I think that the district court's exercise of discretion here was proper in looking at the action as a whole and saying that the United States substantially prevailed. Then on the issue of the district court's order saying, give me segmented time entries. Give me the detail that shows what time you spent not on actions, not on claims that were rejected, but on the one accounting claim you prevailed on. And despite repeated attempts, they couldn't produce that. The last issue, Your Honor, is the issue of whether the fees were incurred at all. And that's an issue that I don't think Mr. Strimple really focused on, but let me try to do that here. If you look at the fee agreement, which I have here from 2009, it provides basically that fees will be incurred only if one of three contingencies happens. One, the caption case settles, or the government is ordered to pay over amounts improperly paid to non-Osages. Now you see again how central paying the non-Osages was to the cause of actions that they actually brought. Or third, the lawyers obtained funding from a third party willing to underwrite all or part of our fees. The district court found that none of those three contingencies was triggered, and on that basis, no fees were incurred. To counter that, plaintiffs rely on a decision from the Sixth Circuit in which- Well, forget about the Sixth Circuit. What about Centennial? I thought you weren't really contesting that point on appeal. You were just- You were focusing more on the fact that there wasn't evidence that the parties would actually turn over the money to the attorneys. Yes, but I- Centennial may be wrong. No. It pretty much says if there were attorneys working on the case, then fees were incurred. It talks about flat rate fees. It talks about pro bono cases. It was pretty general that if an attorney works on the case, then you can get fees under the statute. So, Your Honor, I think whether you conceive of it as an argument based on the text of incurred, and I recognize what the court said, and you writing for the court said in Centennial, or whether you conceive of it as this obligation to pay over fees, there was no obligation to pay over fees here. And I think that your decision in Centennial is consistent with the notion that the fee-shifting statute should be read to avoid a windfall. And the Turner case, in which the plaintiffs most prominently rely, said that in that case, there was a very clear agreement to pay over fees from the client to the lawyer, and we don't have that in this case. The district court found there was no such obligation here. The engagement letter states counsel's fee will be 40% of the amount, one, paid in settlement, or two, paid by the U.S. government pursuant to a district court's order, and any amount awarded as fees, or such other amount as any reviewing court may determine. That sure sounds like they have an obligation to turn over any fee award. Well, my construction of that, Your Honor, is that that is not about the contingencies that trigger the fee award. That's about the amount of the fee award, if a fee is ordered. It starts out that way, yes. But then it says it's 40% of this and any amount. But and any amount, right? So that means both of those conditions need to be met, and one of them wasn't met because the government wasn't ordered to pay any fees. Did the judge actually consider that language? Yes. I mean, this language is the language he quoted in his opinion. I have five seconds left, so let me say that if the court has skepticism on that one issue, I still don't think that's a reason not to affirm on the other two grounds, namely the district court order was violated and our position was substantially justified. Thank you. Does Mr. Strimple have any remaining time? He does not. Okay. Then we won't give him any. Okay. Thank you, counsel. Case is submitted. Counsel are excused.